UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ALEJANDRO ARREDONDO-SILVA,**<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>**KEVIN RAYCRAFT, in his official capacity as Field Office Director of Enforcement and Removal Operations, Detroit Field Office, Immigration and Customs Enforcement, KRISTI NOEM, in her official capacity as Secretary, U.S. Department of Homeland Security, U.S. Department of Homeland Security, PAMELA BONDI, in her official capacity as U.S. Attorney General, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,**<br><br>　　　　　　Defendants. | **2:25-CV-13674-TGB-KGA**<br><br>HON. TERRENCE G. BERG<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

　　　　Now before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1. Petitioner Alejandro Arredondo-Silva is an alien[1] who entered the United States unlawfully almost ten years ago

---

[1]　　The term "alien" can sometimes be used in a derogatory fashion or to promote stereotypes or insults. Although the term "noncitizen" is more neutral and preferred by the Court, "alien" is the term used in the

1

and has resided here since. On October 1, 2025, federal law enforcement officers encountered and detained Petitioner. Immigration and Customs Enforcement ("ICE") officers thereafter placed Petitioner in civil immigration removal proceedings and ordered him to be held in detention without a bond hearing. Petitioner contends his detention without a bond hearing is unlawful in violation of 8 U.S.C. § 1226(a) and he seeks a writ of habeas corpus requiring that he be immediately released from custody unless he is provided with a bond hearing under Section1226(a) within seven days. Respondents contest Petitioner's petition, arguing that he has no right to a bond hearing under § 1226(a) because he was properly detained without bond under a different provision of the INA, 8 U.S.C. § 1225(b)(2)(A).

      For the reasons that follow, the Court will **GRANT** Petitioner's Petition for a Writ of Habeas Corpus and **ORDER** Respondent Kevin Raycraft, the Acting Detroit Field Office Director of ICE's Enforcement and Removal Operations, to release Petitioner by **5:00 p.m. on December 22. 2025**, unless Petitioner has received a bond hearing under Section 1226(a) by that date.

---

Immigration and Nationality Act ("INA") at issue in this action, so the Court will use that term during its discussion of the statute to avoid confusion.

2

## I. BACKGROUND

Petitioner Alejandro Arredondo-Silva ("Arredondo-Silva" or "Petitioner") is a citizen of Mexico who has resided in the United States for almost 10 years, most recently in Mount Clemens, Michigan. Petitioner is married to a United States citizen, they have one United States citizen child, age 4, and he has two United States citizen stepchildren, ages 6 and 8. ECF No. 1.[2]

ICE agents apprehended Petitioner and placed him in immigration detention on approximately October 1, 2025. He is detained at the Monroe County Jail in Monroe, Michigan. He is charged with having entered the United States without inspection and presently remains in detention subject to ICE's newly adopted policy of mandatory detention. At no time has Petitioner been provided with a hearing to challenge his mandatory detention during the removal process. No judicial officer has considered whether he should be offered the opportunity to post bond or be released under other conditions.

On November 18, 2025, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, claiming that his detention without a bond hearing violates the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. ECF No. 1. Respondents argue in response that the detention of Petitioner is

---

[2] All facts are taken from the Petition, and are not contested for purposes of the issues presented.

mandatory under their newly adopted interpretation of the statute and, therefore, he is not being unlawfully detained. Respondents also argue that the Court should refrain from deciding the merits of the petition until Petitioner exhausts his administrative remedies. Finally, Respondents maintain that the only proper respondent to Petitioner's application for the writ of habeas corpus is his immediate physical "custodian," That is, the warden of the Monroe County Jail. ECF No. 6.

## II.   LEGAL STANDARD

A district court may issue a writ of habeas corpus to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Pursuant to 28 U.S.C. § 2243, the court, when evaluating an application for the writ of habeas corpus, "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant … is not entitled thereto."

## III.   DISCUSSION

### A. Proper Respondents

Petitioner names as Respondents: (1) Kevin Raycraft, Director of the Detroit Field Office for the U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations; (2) U.S. Department of Homeland Secretary Kristi Noem; (3) the U.S. Department of Homeland Security; (4) U.S. Attorney General Pamela

4

Bondi; and (5) the Executive Office for Immigration Review ("EOIR"). Respondents claim that the only proper defendant is the warden of the facility where Petitioner is detained (who is not named in this suit). Respondents alternatively argue that the only proper respondent in this case is Director Raycraft because he is vested with the immediate legal control of Petitioner's detention. ECF No. 6, PageID.115–16.

Section 2243 instructs a habeas court to direct the writ "to the person having custody of the person detained." 28 U.S.C. § 2243. "The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Judicial Circuit Ct. of Ky.*, 410 U.S. 484, 494–95 (1973). As such, the proper habeas respondent must have "the power to produce the body of [the petitioner] before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)). In *Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003), the court held that the ICE Field Office Director is the immediate custodian of an individual in immigration detention. *Id.* at 322. Although in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the Supreme Court set a "default rule" that "the proper respondent is the warden of the facility where the prisoner is being held," *id.* at 435, the Court explicitly left open the question of "whether [a remote supervisory official] is a proper respondent to a habeas petition filed by an alien detained pending

5

...

deportation." *Id*. Courts in this district and Circuit have therefore found that specifically for habeas proceedings with immigrant petitioners facing deportation, *Roman's* rule still applies, because application of that rule was explicitly left open by *Padilla*. *See Zambrano Paz v. Raycraft*, No. 25-13563, 2025 WL 3473361, at *2–3 (E.D. Mich. Dec. 3, 2025) (Behm, J.) (collecting cases). This Court agrees with those decisions that *Roman* was not overruled by *Padilla* and remains binding law in this Circuit.

ICE maintains multiple regional field offices to oversee the day-to-day operations of its enforcement and detention apparatus. *See* https://perma.cc/V654-7R2J. The Detroit Field Office is responsible for enforcement operations and detention in Michigan and Ohio. *See id*. As such, Director Raycraft is *a* proper respondent with respect to Petitioner here. This does not mean that the remaining individuals and entities are not also properly named as Respondents.

Petitioner is being detained under a new ICE directive, issued in coordination with the Department of Justice, instructing that Section 235(b) of the INA, 8 U.S.C. § 1225(b), rather than Section 236, 8 U.S.C. § 1226(a), applies to all illegal immigrants except those admitted to the United States and chargeable with deportability under Section 237 of the statute. *See https://perma.cc/UEL5-NMA7*. Petitioner is not seeking only his immediate release or a bond hearing in this action, but also asks the Court to declare that § 1226(a), rather than § 1225(b)(2)(A), is the

6
]]>

deportation." *Id*. Courts in this district and Circuit have therefore found that specifically for habeas proceedings with immigrant petitioners facing deportation, *Roman's* rule still applies, because application of that rule was explicitly left open by *Padilla*. *See Zambrano Paz v. Raycraft*, No. 25-13563, 2025 WL 3473361, at *2–3 (E.D. Mich. Dec. 3, 2025) (Behm, J.) (collecting cases). This Court agrees with those decisions that *Roman* was not overruled by *Padilla* and remains binding law in this Circuit.

ICE maintains multiple regional field offices to oversee the day-to-day operations of its enforcement and detention apparatus. *See https://perma.cc/V654-7R2J*. The Detroit Field Office is responsible for enforcement operations and detention in Michigan and Ohio. *See id*. As such, Director Raycraft is *a* proper respondent with respect to Petitioner here. This does not mean that the remaining individuals and entities are not also properly named as Respondents.

Petitioner is being detained under a new ICE directive, issued in coordination with the Department of Justice, instructing that Section 235(b) of the INA, 8 U.S.C. § 1225(b), rather than Section 236, 8 U.S.C. § 1226(a), applies to all illegal immigrants except those admitted to the United States and chargeable with deportability under Section 237 of the statute. *See https://perma.cc/UEL5-NMA7*. Petitioner is not seeking only his immediate release or a bond hearing in this action, but also asks the Court to declare that § 1226(a), rather than § 1225(b)(2)(A), is the

appropriate statutory provision governing the detention of noncitizens like him—that being, individuals who were not at the border or a port of entry seeking admission to the United States when they were detained, but who were already residing in the country when they were apprehended and charged as inadmissible. Petitioner also seeks injunctive relief to prevent his transfer from this District pending removal proceedings. Secretary Noem, through Homeland Security, and Attorney General Bondi, through the Department of Justice, are responsible for the directive at issue, the implementation and enforcement of the INA (including the detention and removal of noncitizens), and the immigration court system where Petitioner is being denied bond hearings.

For these reasons, the Court finds no basis to dismiss these named Respondents from this action. However, the Court finds no reason to include the EOIR, which will be dismissed.

**B. Exhaustion**

Respondents argue that Petitioner must exhaust his administrative remedies before proceeding with his claims here. Exhaustion is required when Congress "specifically mandates" it. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). When exhaustion is not mandated, the decision whether to require it is within the court's "sound judicial discretion." *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (citation omitted). A growing number of district judges have concluded, when ruling on

7

habeas petitions like the current one, that no applicable statute or rule requires administrative exhaustion in this situation and exhaustion should not be required. *See, e.g., Lopez-Campos v. Raycraft*, ––– F. Supp. 3d –––, 2025 WL 2496379, at *4–5 (E.D. Mich. Aug. 29, 2025) (McMillion, J.); *Jose J.O.E. v. Bondi*, ––– F. Supp. 3d –––, 2025 WL 2466670, at *5–6 (D. Minn. Aug. 27, 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1250–54 (W.D. Wash. 2025); *Morales-Martinez v. Raycraft*, No. 25-cv-13303, 2025 WL 3124695, at *2 (E.D. Mich. Nov. 7, 2025) (Behm, J.) ("agree[ing] with the majority of district courts in this circuit and around the nation in deciding not to enforce an exhaustion requirement"). This Court adopts the reasoning in those decisions and in the exercise of its sound judicial discretion, declines to require Petitioner to seek release from an Immigration Judge as a condition of proceeding with his claims here because any such request to an Immigration Judge would be futile. As Respondents candidly acknowledge, the Board of Immigration Appeals has recently issued a decision rejecting Petitioner's argument that he is entitled to a bond hearing under Section 1226(a). ECF No. 6, PageID.116–17. Respondents further acknowledge that that decision—*Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025)—"is binding on the agency and the immigration courts[.]" *Id.* Thus, absent intervention by this Court, an Immigration Judge would reject Petitioner's arguments that he is entitled to a hearing under § 1226(a), and would instead conclude that he "lack[ed] authority to hear [the] bond

8

requests or to grant bond" under § 1225(b)(2)(A). *Matter of Yajure Hurtado*, 29 I & N at 225.

Because seeking release from an Immigration Judge would be "a futile gesture," *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981), the Court, like numerous other district courts to have considered the issue, declines to require Petitioner to move for release on bond in Immigration Court as a precondition of seeking relief here. *See Casio-Mejia v. Raycraft*, No. 25-cv-13032, 2025 WL 2976737, at *5 (E.D. Mich. Oct. 21, 2025) (McMillion, J.) (collecting cases).

**C. The Merits**

The key issue here is which detention provisions of the INA apply to individuals like Petitioner—that is, non-U.S. citizens facing removal proceedings who were not taken into custody at the border or a port of entry but who have been living in the United States for some period of time. The choice is between the discretionary detention framework of § 1226(a), as Petitioner argues, or the mandatory detention requirement in § 1225(b)(2), as Respondents argue. There is no dispute that noncitizens arrested and detained under § 1226(a) have a right to request a custody redetermination, that is, they can ask for a hearing before an Immigration Judge to request release on bond. This Court is not the first to decide which provision applies.

Numerous courts in this District and the Sixth Circuit and throughout the country have been presented with this issue since July of

9

this year, 2025, when ICE issued its mandatory-detention directive and departed from the government's longstanding position that § 1226(a) of the INA applied to individuals like Petitioner and afforded them a bond hearing rather than requiring them to be mandatorily detained. An overwhelming majority of courts that have considered the issue have concluded that § 1226(a) is the appropriate statutory framework for individuals who have been resident in the country going through the removal process. *See, e.g., Torres-Vasquez v. Raycraft*, No. 25-13571, 2025 WL 3473359, at *3 (E.D. Mich. Dec. 3, 2025) (Parker, J.) (collecting voluminous cases); *Zambrano Paz*, 2025 WL 3473361; *Hurtado-Medina v. Raycraft*, No. 25-13248, 2025 WL 3268896 (E.D. Mich. Nov. 24, 2025) (Leitman, J.); *Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025) (listing 282 decisions granting similar habeas petitions and only six decisions denying in Appendix at ECF No. 11-1) (Appendix at ECF No. 7-1); *see also Velazquez v. O'Neill*, No. 25-6191, 2025 WL 3473363, at *2 (E.D. Pa. Dec. 3, 2025) (noting the 282 favorable habeas decisions listed in *Demirel* and stating "[s]ince then, a judge on the Southern District of New York calculated the figure at 350."). Comparatively few district courts have accepted the new interpretation announced by the government.[3]

---

[3] Respondents cite to a handful of such decisions: *Chavez v. Noem*, –––– F. Supp. 3d ––––, 2025 WL 2730228, at *4–5 (S.D. Cal. Sept. 24, 2025) (concluding that § 1225(b)(2) applies to noncitizens present in the United

The section of the INA requiring mandatory detention, § 1225(b)(2)(A), is the provision of the Act entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225. The section starts by identifying the class of aliens covered by § 1225(b)(2)(A): "applicants for admission." *Id.* § 1225(a)(1). The section continues: "An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." *Id.* Elsewhere, "admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Section 1225 is "framed [] as part of the process that 'generally begins at the Nation's borders and ports of entry, where the Government must determine whether a [non-citizen] seeking to enter

---

States under the plain meaning of the statute); *Mejia Olalde v. Noem*, No. 25-00168, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025) (same); *Silva Oliveira v. Patterson*, No. 25-01463, 2025 WL 3095972 (W.D. La. Nov. 4, 2025) (same); *Barrios Sandoval v. Acuna*, No. 25-01467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025) (same); *Garibay-Robledo v. Noem*, No. 25-177, 2025 WL 2638672 (N.D. Tex. Oct. 24, 2025); *Vargas Lopez v. Trump*, No. 25-526, 2025 WL 2780351, at *4–9 (D. Neb. Sept. 30, 2025) (same); (same); *Pena v. Hyde*, No. 25-11983, 2025 WL 2108913 (D. Mass. July 28, 2025) (same).

the country is admissible.'" *Rosado v. Figueroa*, No. 2:25-cv-02157, 2025 WL 2337099, at *8 (D. Ariz. Aug. 11, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 287–88 (2018)), *report and recommendation adopted*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025). The section generally defines the procedure required when an alien is being screened or otherwise examined by an immigration officer for possible admission into the United States. Subsection (b) of 8 U.S.C. § 1225 is entitled "Inspection of Applicants for Admission," and subsection (b)(1) is "Inspection of Aliens Arriving in the United States and Certain Other Aliens Who Have Not Been Admitted or Paroled", which is followed by (b)(1)(A), entitled "Screening."

The next section, Section 1225(b)(2), is entitled "Inspection of Other Aliens," and subsection (b)(2)(A) provides, subject to exceptions not relevant here, that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title [removal proceedings]." 8 U.S.C. § 1225(b)(2)(A). The subsection thus provides that an alien "shall" be detained provided that "the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." Aliens so detained after a determination by the examining immigration officer under § 1225(b)(2)(A) are not entitled to a bond hearing, although

12

the Secretary of Homeland Security, in his or her discretion, may temporarily parole an individual "for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A). Section 1225 thus governs the context when an alien is being examined by an immigration officer for possible admission.

Section 1226, on the other hand, describes the process that applies when "arresting and detaining" noncitizens who are already living "inside the United States" but who are still subject to removal (like Petitioner). *Jennings*, 583 U.S. at 288. The title of § 1226 of the INA is "Apprehension and detention of aliens[.]" 8 U.S.C. § 1226. Section 1226(a) is titled "Arrest, detention, and release[.]" *Id.* § 1226(a). This provision reads:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
>  (1) may continue to detain the arrested alien; and
>
>  (2) may release the alien on—
>
>   (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
>   (B) conditional parole; but

13

>    (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

*Id.* The statute's implementing regulations also provide that, before a final order of removal is issued, the alien may "request amelioration of the conditions under which he or she may be released"—such as an application to the immigration judge for release on bond. 8 C.F.R. § 1236.1(d)(1).

According to the plain language of the statute then, § 1225(b)(2)(A) applies only when an alien is being examined by an immigration officer when "seeking admission" and the "examining immigration officer" concludes that the alien "is not clearly and beyond doubt entitled to be admitted." In this case, Petitioner was not being examined by an immigration officer in the process of seeking admission. He was going about his everyday life when he was stopped, arrested, and placed in ICE custody, presumably pursuant to a warrant. The plain language of § 1226, including the title of that section and its subsections, applies to Petitioner's situation. *See Dubin v. United States*, 599 U.S. 110, 120–21 (2023) ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.").

14

Respondents nevertheless maintain that any noncitizen "present in the United States who has not been admitted" is an "applicant for admission" under the plain language of § 1225(a)(1). Thus, Respondents continue to argue, all non-admitted aliens present in the United States are "applicants for admission" regardless of their proximity to a border, the length of their presence, or whether they intend to properly apply for admission. Under Respondents' new interpretation of § 1225, because Petitioner is an alien, he is defined under the statute as "an applicant for admission" which means he must be seen as permanently "seeking admission"—and at any time an immigration officer can "examine" him and determine that he was not clearly and beyond a doubt entitled to be admitted, and be subjected to mandatory detention without any bond hearing. As will be discussed, however, this interpretation stretches the language of the statute to the breaking point.

Indeed, several courts have concluded that Respondents' interpretation "suffers from a number of fatal flaws." *Guerrero Orellana v. Moniz*, –––– F. Supp. 3d ––––, 2025 WL 2809996, at *7 (D. Mass. Oct. 3, 2025). "Equating the terms 'applicant for admission' and 'seeking admission' ignores the plain meaning of the latter phrase, which ... implies some present action." *Id.*; *see also Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025) (citations omitted). Respondents' interpretation also "is contrary to the [Department of Homeland Security]'s own implementing regulations, its published guidance, the

15

decisions of its immigration judges (until very recently), decades of practice, the Supreme Court's gloss on the statutory scheme, and the overall logic of our immigration system." *Romero v. Hyde*, 795 F. Supp. 3d 271, 282 (D. Mass. 2025) (internal citations omitted). It also violates a "cardinal principle of statutory construction"—specifically, that "a statute ought, upon the whole, be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Alvarez Ortiz v. Freden*, —— F. Supp. 3d ——, No. 25-CV-960-LJV, 2025 WL 3085032, at *7 (W.D.N.Y. Nov. 4, 2025) (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)). If possible, every clause and word of a statute must be given effect. *United States v. Menasche*, 348 U.S. 528, 538–39 (1995).

"As numerous courts have observed, if all 'applicants for admission' also are 'seeking admission,' then the words 'seeking admission' would be surplusage." *Alvarez Ortiz*, 2025 WL 3085032, at *7 (collecting cases). "After all," the court reasoned in *Alvarez Ortis*, "Congress simply could have said 'if the examining immigration officer determines that an applicant for admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained.' Instead, however, Congress said that an alien who is an applicant for admission and who is seeking admission shall be detained if the examining immigration officer determines that he or she is not clearly entitled to be admitted." *Id.* (quoting 8 U.S.C. § 1225(b)(2)(A)). Thus, the district court concluded,

16

"'seeking admission' cannot be synonymous with 'applicant for admission.' It must refer to seeking physical entry at the border, not the legal right to enter." *Id.* (footnotes omitted).

In short, § 1225 specifically covers noncitizens detained at a border or port of entry who are being examined by immigration officers, while § 1226 provides the procedures for detention of noncitizens who are arrested while residing in the United States. Petitioner was not apprehended upon his arrival to the United States at a border or port of entry. Instead, he was living in the United States—albeit without having been legally admitted—for almost 10 years when he was arrested. Section 1226, therefore, governs his detention and he is entitled to a bond hearing under the statute's discretionary framework.[4]

---

[4] Independently, Petitioner may be eligible for relief based on a decision in a class action from the United States District Court for the Central District of California issued shortly after this case was filed. On November 20, 2025, a federal district judge declared the Government's mandatory-detention scheme illegal, and five days later, it extended "the same declaratory relief granted" in the November 20 order to a class that appears to include Petitioner. *See Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3288403, at *4, 9 (C.D. Cal. Nov. 25, 2025) (certifying a class consisting of "All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination."). Because Petitioner succeeds on his own statutory claim, the Court need not address whether he is presently eligible for relief based on the decision in *Maldonado*

## IV. CONCLUSION

The Court concludes that, with the exception of EOIR, the named individuals and agencies are proper Respondents in this case.[5] The Court further concludes that Petitioner need not exhaust his administrative remedies to proceed with his request for habeas relief under § 2241. Finally, the Court holds that by denying Petitioner a bond hearing, Respondents have violated the INA. The Court therefore finds it unnecessary to address Petitioner's due process claim at this time.

Accordingly,

**IT IS ORDERED** that Petitioner's habeas corpus petition is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner shall be afforded a bond hearing under § 1226(a) before an immigration judge on or before **5:00 p.m. on December 22, 2025**, or be released.

---

*Bautista*. And to the extent that Petitioner may argue that *Maldonado Bautista* entitles him to immediate release, he would be incorrect. *See Maldonado Bautista*, 2025 WL 3288403, at *9 ("[A] classwide order declaring the DHS policy in violation of the class members' rights would not ensure their release on bond; it merely secures a right to an individualized hearing.").

[5] EOIR is therefore being terminated as a party to this action.

**IT IS FURTHER ORDERED** that, within fourteen (14) days of this Opinion and Order, Respondents shall file a status report certifying their compliance with this Opinion and Order and detailing the results of the bond hearings.

**IT IS SO ORDERED.**

Dated: December 15, 2025      /s/Terrence G. Berg
                              HON. TERRENCE G. BERG
                              UNITED STATES DISTRICT JUDGE